**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Henri Solari, et al., | ) | Case No. 5:14 CV 1000 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Goodyear Tire and Rubber Co., | ) | [Docs. 25; 26; and 35.] |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER** |

This matter comes before the Court on the motion of Defendant, Goodyear Tire and Rubber Co. ("Goodyear U.S."), to dismiss the Amended Complaint filed by Plaintiffs, Henri Solari, et al., under the doctrine of *forum non conveniens*. For the reasons stated herein, the motion is GRANTED.

**I.      Facts**

Heni Solari, Gérard Carnaby, and Charley Dupuis are residents of France, who were employed by Goodyear Dunlop Tires France, SA ("GDTF") at its tire-making factory in Amiens, France (the "Amiens Factory"). (Amended Complaint, ¶¶ 1, 9-11.) Henri Solari worked at the Amiens factory as an agrarian tire maker from 2005-2006 and again from 2008-2014. (Amended Complaint, ¶ 10.) Gérard Carnaby worked at the Amiens Factory as a heating mechanic from 1972 – 2004. *Id.* Charley Dupuis worked at the Amiens Factory, beginning in 1971, in various positions in the consumer and tractor tire making divisions as a mechanic. (Amended Complaint, ¶ 11.)

GDTF, the entity that employed all three men, is a limited liability company organized under the laws of France. GDTF maintains a registered office in Rueil Malmaison, France. (*Id.* ¶ 16(b).) GDTF, the French limited liability company, is itself wholly owned by Goodyear Dunlop Tires Europe B.V. ("Goodyear Dunlop"). (Miller Affidavit ¶ 7.) Goodyear Dunlop is incorporated in the Netherlands. Goodyear Dunlop, the Dutch Corporation, is itself a joint venture between Goodyear S.A., a foreign subsidiary of Goodyear U.S., and Sumitomo Rubber Industries Ltd. ("Sumitomo"), a Japanese company. (*Id.* ¶ 8.)  Goodyear S.A., which is wholly owned by Goodyear U.S., is incorporated in Luxembourg, and holds a 75% interest in Goodyear Dunlop, the Dutch corporation that wholly owns GDTF, the French limited liability company that owns and operates the factory in Amiens, France, where Plaintiffs worked. Sumitomo controls the remaining 25% interest in Goodyear Dunlop, the Dutch corporation that wholly owns GDTF. *Id.* Goodyear U.S. is thus GDTF's partial corporate owner. Plaintiffs have not named GDTF (the French limited liability company); Goodyear Dunlop (the Dutch Corporation); Goodyear S.A. (the Luxembourg corporate entity); Sumitomo (the Japanese company); or any of the individuals or boards operating the Amiens Factory in their Amended Complaint. Instead, plaintiffs have named Goodyear Tire & Rubber Company, which is incorporated under the laws of Ohio and maintains executive offices in Akron, Ohio.

Plaintiffs seek to be certified as class representatives of "hundreds of current and former employees of the Amiens Factory [who] have suffered harm to their physical and/or mental health" due to their alleged exposure to toxic substances through their employment in Amiens, France. (Amended Complaint ¶ 1.) By way of example, Plaintiff Gerard Carnaby alleges that he developed bladder cancer as a "result of his employment" in France. (*Id.* ¶¶ 10, 21.) Plaintiff Henri Solari alleges that he developed eczema on his hands and legs and is "extremely anxious

and distressed about [his] health and … ability to work and sustain [his] quality of life in the future" from exposure to toxic substances while working in Amiens, France. (*Id*. ¶¶ 21, 93, 97.) Although Plaintiff Charley DuPuis, who was employed in Amiens, France for a total of forty-three years, is "not currently ill," he alleges that he is "at risk of developing health problems in the future due to his employment in the Amiens Factory," and claims to be "extremely anxious and distressed at the prospect of also developing" such problems. (*Id*. ¶¶ 11, 21, 101.) The three named plaintiffs are residents and/or citizens of France. The material in the complaint suggests that all or substantively all of the 700+ putative class and subclass members are also citizens and/or residents of France. (Amended Complaint, ¶ 22.) Plaintiffs seek to invoke the diversity jurisdiction of this Court.

Plaintiffs allege that their injuries, and the injuries of the putative class members, are the result of the control and oversight of Goodyear U.S., but not GDTF or the other entities identified in the corporate ownership structure of GDTF. Plaintiffs define their class as "persons who were employed by GDTF at the Amiens Factory, at anytime[sic] between 1995 and the present date, and who have suffered, currently suffer, or may in the future suffer harm to their physical and/or mental health as a direct and proximate cause of the Defendant's acts and omissions." (Amended Complaint, ¶ 18.) Plaintiffs claim that Goodyear U.S., not GDTF or management at the Amiens Factory, were under a duty to inform class members of the dangers associated with the chemicals used in the production of tires in Amiens, France and failed to provide them with a safe working environment. Plaintiffs continue to allege promissory estoppel, negligence, negligent undertaking, failure to warn, negligent misrepresentation, inadequate warning or instruction, nonconformance with manufacturer's representations, and spoliation or

3

destruction of evidence, against Goodyear, U.S.; Plaintiffs do not name any of the other cooperate entities that were involved in the ownership and operation of the Amiens factory.

Goodyear U.S. filed a motion to dismiss on grounds of *forum non conveniens*.  The parties have fully briefed the issue and it is now ripe for review.

## II.    Law and Analysis

**The Doctrine of *Forum Non Conveniens***

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "Courts of equity and of law" may "occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents, or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal." *Gulf Oil, supra* at 504. "The doctrine presupposes the availability of at least two forums in which the defendant may be sued; the defendant seeking a *forum non conveniens* dismissal must identify an alternative forum." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984). "Once the existence of such a forum is established the trial court must consider the private interests of the litigants and factors of public interest in determining [the] relative convenience of the forum chosen by the plaintiff as opposed to the available alternate forum." *Id.* The *forum non conveniens* determination is "committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, citing *Gulf Oil*, *supra*, at 511-512. "It may be reversed only where there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*

4

The "private interest" and "public interest" factors this Court considers when exercising its discretion were first identified by the United States Supreme Court in *Gulf Oil, supra*; they were adopted by the Sixth Circuit Court of Appeals in *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 (1984). The private interest factors are:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process for the attendance of unwilling witnesses;
> (3) the costs of obtaining attendance of willing witnesses;
> (4) the possibility of a view of premises, if a view is appropriate to the action;
> (5) the enforceability of a judgment if one is obtained; and
> (6) "all other practical problems that make trial of a case easy, expeditious, and inexpensive."

Paraphrased from *Gulf Oil*, *supra* at 508. The Court describes the public interest factors as:

> (1) the administrative difficulty of handling litigation in congested centers rather than at its origin;
> (2) placing the burden of litigation and jury duty on the community related to the controversy;
> (3) ensuring that cases that "touch the affairs of many persons" are held in their view and not in "remote parts of the country where they can learn of it by report only;"
> (4) "local interest in having localized controversies decided at home;"
> (5) the "appropriateness" of "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself;

*Id.* at 509. Although the Supreme Court and the Sixth Circuit have identified factors to consider, the essence of the doctrine is its flexibility. The Supreme Court specifically declined "to lay down a rigid rule to govern discretion," because "each case turns on its facts." *Piper Aircraft, supra,* at 250. "If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." *Id.*

In *Piper Aircraft* the Supreme Court was asked to consider whether a trial court should be barred from dismissing a suit under *forum non conveniens* when the law applicable in the

alternative forum is less favorable to the plaintiff's chance of recovery. *Piper Aircraft* involved a suit filed in California by the estates of several Scottish nationals who were killed in a plane crash in Scotland. The decedents and their surviving heirs were Scottish citizens and residents of Scotland, where the crash and investigation of the circumstances took place. The *Piper* plaintiffs brought suit against the Pennsylvania and Ohio manufacturers of the plane in the United States for the express purpose of taking advantage of domestic tort law regarding strict products liability. At that time Scots law did not recognize strict liability torts. *Piper Aircraft*, *supra*, at 240. In Scotland the plaintiffs were limited to a wrongful death suit, wherein recovery could be had only for "loss of support and society." *Id.* The Supreme Court concluded that the absence of a tort action in Scotland did not merit a finding that "the remedy provided in the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. The Court held "[a]lthough the relatives of the decedents may not be able to rely on strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly." *Id.* at 255.

The Supreme Court's *Piper* decision modified the presumption in favor of a plaintiff's choice of forum stated in *Gulf Oil*. Prior to *Piper* a plaintiff's choice of forum would be "overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* However, under *Piper*, a foreign plaintiff's forum choice "deserves less deference:

> When the home forum has been chosen it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Id.* at 256. The Supreme Court concluded, "[f]inding that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on grounds of *forum non conveniens*." *Id.* at 259. This includes instances in which the "chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Id.* at 241, citing *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518 (1947), (internal quotations omitted).

### (i.) Adequate Alternative Forum

"Under the first part of the analysis, an adequate alternative forum must be identified." *Wong v. Party Gaming, Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009), citing *Stewart v. Dow Chems. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). "This requirement will be satisfied if the defendant is 'amenable to process' in the foreign jurisdiction." *Id.* citing *Piper Aircraft, supra.* at 255, n. 22. The requirement that the defendant be "amenable to process" is satisfied where a party agrees to submit to the courts of a foreign nation. *Wong*, *supra,* at 831(Gibraltar is an adequate alternative forum, where defendant has agreed to submit to process, even though there is no class action mechanism available to plaintiff); *see also Rustal Trading U.S., Inc. v. Makki*, 17 Fed Appx,. 331, 336 (6th Cir.2001) (Sierra Leone is an adequate forum where defendants have agreed to submit themselves to its courts); and *Stewart v. Dow Chems. Co.*, 865 F.2d 103, 107 (6th Cir. 1989) (Canada is an adequate alternative forum where defendant agreed to submit to the jurisdiction of Canadian courts).

The Supreme Court itself found Scotland was an adequate alternative forum in *Piper Aircraft* even in the absence of a cause of action in tort for strict products liability, the Court held that the forum was adequate because there was *a* form of action available to the decedents' estates, it was not necessary that *the* same cause of action, or even an analogous cause of action,

be identified. *Piper Aircraft*, *supra* 454 U.S. at 240-242 ("Scottish law does not recognize strict liability in tort. Moreover, it permits wrongful-death actions only when brought by a decedent's relatives." Nevertheless, it was adequate that "[Defendants] had agreed to submit to the jurisdiction of the Scottish courts and to waive any statute of limitations defense that might be available.") In *Piper Aircraft, Wong, Rustal Trading,* and *Stewart,* among other decisions, the Supreme Court and the Sixth Circuit have affirmed a district court's reliance on the affidavits submitted by attorneys and legal experts from the proposed alternative forum when determining the adequacy of the forum.

Defendant in this instance offers the extensive statements of Jean-Paul Béraudo, a retired French Justice of the *Cour de Cassation* (Supreme Court of France), who identifies a number of existing tribunals, including the *Tribunal des Affaires de Sécurité Social or* "*TASS*" (a social security court that hears occupational disease claims) and the *Counseil de Prud'Hommes or "CPH"* (where claims of other harm related to workplace injuries or exposures may be brought); both courts govern the workplace and employer-employee relationships in France. (Béraudo Declaration, ¶ 24.) In addition to the subject matter specific bodies, French courts hear product liability, tort, and promissory estoppel claims, as well as appeals from the labor and social security tribunals. The French system also has mechanisms to protect evidence, penalize spoliation, and compel appearance. (Béraudo Declaration, ¶¶ 14–86.)

Béraudo notes that Plaintiffs' claims arise from their employment by a separate entity from Defendant, and indicates that to the extent Plaintiffs establish that harm suffered in France arose out of actions that took place or were controlled by Goodyear U.S. in Akron, Ohio, a French court will assert jurisdiction over Goodyear U.S. in the matter. (Béraudo Declaration ¶

10-13.) Moreover, in France, a party may consent to jurisdiction, as Goodyear U.S. has agreed to do:

> Goodyear U.S. is willing to submit to personal jurisdiction in France in actions refiled by these plaintiffs (but only in refiled actions arising out of the same alleged injuries, and in no other actions filed by these or other plaintiffs), to toll any statute of limitations that might be applicable to such refiled actions for 120 days after a conditional dismissal by this Court, to make available in such refiled actions in the courts of France any evidence and witnesses in its possession, custody, or control in the United States that the French courts may deem relevant to the resolution of any issue before them, and to pay any damages awarded by the French courts in such refiled actions, subject to any right to appeal.

(Ubersax Declaration, ¶ 2.) Béraudo further opines that under French, and European Union (E.U.) Law, the law of the forum in which the harm occurred would govern the dispute. Thus, in this instance it appears French law would govern the dispute.

Plaintiff has filed a competing expert declaration, from Bruno Dondero, a tenured "first class" professor at the Sorbonne University in Paris, who challenges Béraudo's statements concerning the potential status of Goodyear U.S. as a *de facto* employer. (Dondero Declaration, ¶ 1.) Dondero's declaration, unlike Béraudo's, assumes that Plaintiffs have conclusively established that their claims arise out of conduct by Goodyear U.S. in Akron. (Dondero Declaration, ¶ 8.)  Under this assumption, Dondero then states that Ohio law would govern the suit, apparently ignoring the first provision of the very authority he cites, which provides:

> *Unless otherwise provided for in this Regulation, the law applicable to a non-contractual obligation arising out of a tort/delict shall be the law of the country in which the damage occurs irrespective of the country in which the event giving rise to the damage occurred. . .*

(Dondero Declaration, ¶ 31, citing French Court Regulation (EC) No 864/2007 and "Rome II" the Council of European Parliament on the law applicable to non-contractual obligations 11 July 2007 at Article 4, part 1.) Dondero asserts, without a clear basis beyond a desire to contradict Béraudo, that a French court applying an E.U. Choice of Law Convention would elect to apply

an exception designed to address "a pre-existing relationship between the parties, such as a contract, that is closely connected with the tort/delict in question" to avoid applying E.U. and French law when evaluating alleged toxic torts suffered by French nationals, due to their employment in a factory owned and operated by a French limited liability company in Amiens, France. (Dondero Declaration, ¶ 31.) Dondero makes this assertion in the context of statements emphasizing that "Plaintiffs do not allege that they had an employment contract with Goodyear . . . [their claims] arise from the simple fact that Goodyear organizes its manufacturing process and safety procedure in Akron." (Dondero Declaration, ¶ 8.)

Dondero makes similar representations concerning Article 14 of the French Civil Code, which, according to both experts, allows a French citizen to elect between bringing suit in France or in an alternate forum, but denies him or her double recovery where s/he has obtained a foreign remedy. (Dondero Declaration, ¶ 24.) Béraudo explains that where the foreign court declines to exercise jurisdiction, the French plaintiff's decision not to exercise his or her Article 14 privilege will not have judicial effect, and the matter may be heard in France. (Béraudo Declaration, ¶18.) Béraudo further notes that a French Court has already asserted jurisdiction over Goodyear U.S. in a suit filed in the Amiens, France *Tribunal de Grande Instance* (French Civil Court in Amiens) by *Comite D'Establissment D'Amiens Nord de la Sociéte Goodyear Dunlop Tires France* (the Amiens North Goodyear Dunlop Tires France Workers' Committee). (Béraudo Declaration, ¶ 20 and Exhibit B.)

For these reasons, this Court finds Professor Dondero's analysis, and the assumptions on which it relies, flawed and unpersuasive. Without engaging too deeply in the "complex exercises in comparative law" the doctrine of *forum non conveniens* "is designed in part to avoid," it is evident from both statements that France offers a variety of labor, occupational health, and

judicial forums to Plaintiffs wherein they may obtain any number of monetary and medical remedies for the conditions and concerns they allege. *Piper Aircraft*, 454 U.S. at 251. The fact that France does not have a class action mechanism does not render it inadequate as a forum. *Wong,* 589 F.3d at 831, *and Piper Aircraft*, *supra* at 255, *inter alia.* This Court finds that, subject to Goodyear U.S. submitting to the jurisdiction of the French court system, France is an adequate alternative forum.

### (ii.)    Private Interest Factors

The private interest factors adopted by the Sixth Circuit Court *Dowling, supra, are*:

(1) the relative ease of access to sources of proof;
(2) the availability of compulsory process for the attendance of unwilling witnesses;
(3) the costs of obtaining attendance of willing witnesses;
(4) the possibility of view of premises, if a view is appropriate to the action;
(5) the enforceability of a judgment if one is obtained; and
(6) "all other practical problems that make trial of a case easy, expeditious, and inexpensive."

Plaintiffs' claims are contingent upon a multitude of facts that that will necessitate the production of documents in French and testimony from individuals in France. These issues include, but are not limited to: evidence of actual harm in the form of medical records; testimony from treating physicians; reports and testimony from medical experts; records and testimony that establish a causal connection between any demonstrated injury and exposure to toxic substances arising out of the daily routines of employment in Amiens; records and testimony that establish the degree to which Goodyear U.S. controlled or directed chemicals used and operations in Amiens, France; records and testimony addressing compliance with applicable French and E.U. health and safety regulations; expert testimony concerning the chemicals and processes used as well as the degree to which they comply with or deviate from applicable standards; presumably all or substantively all of the necessary material would be produced in French and require extensive translation. The

expense and inconvenience of translation alone weighs heavily in favor of dismissal. Even if all necessary witnesses were willing to travel to the United States to provide testimony, the obvious expense of transport and accommodation also weighs in favor of dismissal, as does the fact that this Court does not have a mechanism to compel the appearance of France nationals or residents if they are unwilling.

While directives from Akron may be relevant to the matter, it appears from the material submitted by Plaintiffs that documentary discovery will comprise the majority, if not the whole, of the necessary information from Goodyear U.S., while the actual witnesses to and participants in production in Amiens whose live testimony would be necessary, are in France. Bearing in mind that Plaintiffs seek class certification of individuals employed by GDTF, setting aside any likely legal barriers, the myriad practical problems associated with administering a class of foreign nationals strongly militate against Ohio as a legal forum. Finally, Goodyear U.S. has agreed to submit to the jurisdiction of French Courts and to pay any damages awarded in that forum. The private interest factors in this case unite to weigh heavily in favor of dismissal under the doctrine of *forum non conveniens*.

### (iii.) Public Interest Factors

The public interest factors adopted by the Sixth Circuit Court *Dowling, supra, are*:

(1) the administrative difficulty of handling litigation in congested centers rather than at its origin;
(2) placing the burden of litigation and jury duty on the community related to the controversy;
(3) ensuring that cases that "touch the affairs of many persons" are held in their view and not in "remote parts of the country where they can learn of it by report only;"
(4) "local interest in having localized controversies decided at home;"
(5) the "appropriateness" of "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself;

GDTF is a French limited liability company, subject to both E.U. and French law, the other corporate entities implicated in the ownership and operation of GDTF are based in the Netherlands and in Luxembourg, which are also subject to E.U. law, and in Japan. Although Plaintiffs attempt to ignore the relationship between their claims and the ownership and control of their actual employer, it is clear that any resolution of these issues will involve extensive review of the manner in which the Amiens factory was run, the nature of the regulations applicable to that operation, and the identity of the entity required to comply with such regulations. The community surrounding the Amiens Factory comprises those whose affairs are most touched by the issues raised in this matter. The facts weigh heavily in favor of a finding that this matter would be best settled in the locality where the alleged harm occurred: Amiens, France. The administrative difficulty, burden, and expense associated with conducting this litigation in Ohio militate in favor of dismissal.

French Courts apply E.U. law regularly, they appear to be intimately involved in the regulation of employers operating in France, and are directly concerned with workplace safety and occupational health. According to the information provided by Plaintiffs, all of the individuals employed in Amiens and potentially concerned with the outcome of this suit, are residents of France. Under these circumstances, acknowledging the obvious and overwhelming interest of France in the conduct of industry in France, all of the public interest factors weigh in favor of dismissal under the doctrine of *forum non conveniens*.

### III.    Conclusion

For the reasons stated above, Defendant's Motion to Dismiss the First Amended Complaint under the doctrine of *forum non conveniens* is CONDITIONALLY GRANTED provided Defendant:

(1) Consents to suit and acceptance of process in France in civil actions filed by the Plaintiffs on the claims stated in the First Amended Complaint;

(2) Agrees to make available any documents or witnesses within its control that are necessary for fair adjudication of a civil action brought in the France by the Plaintiffs on the claims stated in the First Amended Complaint;

(3) Consents to pay or perform any judgment or judgments rendered against it in France in a civil action brought by the Plaintiffs on the claims stated in their First Amended Complaint; and

(4) Agrees to waive any statute of limitations defense that did not exist prior to the institution the action filed herein.

Defendant's Motion to Dismiss for Failure to State a Claim is DENIED AS MOOT. Plaintiff's Motion for Leave to File a Sur-Reply is DENIED AS MOOT.

**IT IS SO ORDERED**.


*/s/ John R. Adams*
**U.S. DISTRICT COURT JUDGE**
**NORTHERN DISTRICT OF OHIO**

Dated: October 15, 2015

14